UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| D.W. HUGO, Derivatively on behalf of Nominal Defendant BANKATLANTIC BANCORP, INC., | § § § § | |
| Plaintiff, | § § | Case N0. 08-CV-61018-Ungaro/Simonton |
| v. | § § | |
| ALAN B. LEVAN, JARETT S. LEVAN, JAY C. MCCLUNG, MARCIA K. SNYDER, VALERIE TOALSON, JAMES A. WHITE, JOHN E. ABDO, D. KEITH COBB, STEVEN M. COLDREN and DAVID A LIEBERMAN, | § § § § § § | |
| Defendants, | § § | Jury Trial Demanded |
| and | § § | |
| BANKATLANTIC BANCORP, INC., | § § | |
| Nominal Defendant. | § | |

_____

**PLAINTIFF'S RESPONSE TO ALBERT R. FELDMAN'S MOTION TO INTERVENE
AND STAY PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW**

SALPETER GITKIN, LLP
James P. Gitkin
Eric T. Salpeter
Museum Plaza—Suite 503
200 South Andrews Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 467-8622
Facsimile: (954) 467-8623

*Attorneys for Plaintiff*

[Additional Counsel Appear On Signature Page]

1

COMES NOW Plaintiff D.W. Hugo, derivatively on behalf of Nominal Defendant BankAtlantic Bancorp, Inc. (Plaintiff), and files this Response to Albert R. Feldman's Motion to Intervene and Stay Proceedings and Incorporated Memorandum of Law ("Motion").  For the reasons set forth below, the Motion should be denied.

## I.
### PROCEDURAL AND FACTUAL HISTORY

**A.     The _Hugo_ Action**

This action, _Hugo v. Levan_, et al., Case No.: 08-CV-61018-Ungaro/Simonton ("_Hugo_ action"), was filed on July 2, 2008, (Dkt #1), and summons was issued the same day.  (Dkt #2). On August 7, 2008, the _Hugo_ action was reassigned to the Honorable Ursula Ungaro.   On August 27, 2008, in compliance with this Court's Order, the parties filed their Joint Scheduling Report.  (Dkt. #16 & #18).

In their Joint Scheduling Report, the parties advised the Court of their agreements that (1) "this case should be on a complex track" and (2) "[a]ll discovery should be completed _within 365 days after the Court has ruled on all outstanding motions to dismiss_."  (Dkt. #16 at p.2 (emphasis added)).  The parties requested the 365 day discovery period to begin after the Court ruled on the Defendants' motion to dismiss because the complexity of the case necessitated that length of time and because the parties did not desire to waste their respective resources in the event that the _Hugo_ action was dismissed.  _See_ Affidavit of Jeffrey J. Angelovich at 2, attached as Exhibit 1 and incorporated herein by reference as set forth fully.

On September 5, 2008, after this Court granted two motions for extension of time, one of which was a partial grant, Defendants filed their Motion to Dismiss the Complaint and Memorandum of Law.  (Dkt. #19).  On September 12, 2008, this Court entered its Scheduling Order for Pretrial Conference and Trial ("Scheduling Order").  (Dkt. #21).  Therein, the Court

ordered that the parties complete discovery by June 19, 2009.  (Dkt. #21 at 2).  As it would turn out, this discovery deadline was 175 days shorter than the "365 days after the Court has ruled on all outstanding motions to dismiss" that the parties had requested.

On September 29, 2008, after receiving a limited extension of time, Plaintiff filed his Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Verified Shareholder Derivative Complaint.  (Dkt. #33).  On October 14, 2008, after receiving a limited extension of time, Defendants filed a Reply in support on their motion to dismiss.  (Dkt. # 40).

On December 12, 2008, this Court rendered and entered its Order on Motion to Dismiss, denying Defendants' Motion to Dismiss the Complaint.  (Dkt. # 43).  On January 12, 2009, after receiving a limited extension of time, Defendants' filed their Answer and Affirmative Defenses to Plaintiff's Verified Shareholder Derivative Complaint.  (Dkt. #46).  Thus, issues were joined in this case on January 12, 2009.

Thereafter, the parties exchanged their Initial Disclosures and thoroughly discussed issues related to the disclosure of electronically stored information, including the form or forms in which it should be produced.  (Dkt. # 47, Exh. 1 at p.2).  On May 4, 2009, Plaintiff provided Defendants a detailed letter setting forth Plaintiff's requests regarding the format and manner in which electronically stored information was to be produced and/or identified pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure.  *See* Angelovich Affidavit at 3.

Despite these efforts, and due to a personal matter later revealed to the Court, Plaintiff determined there was not sufficient time to complete discovery by the June 19, 2009, deadline contained in the Court's Scheduling Order.  *Id*. at 4.  Accordingly, on May 22, 2009, Plaintiff filed an Unopposed Motion to Extend Dates Contained in Scheduling Order for Pretrial Conference and Trial (Dkt. # 47).

Therein, Plaintiff requested an approximately six (6) month extension of each remaining deadline (Dkt. # 47, p.2).  As a basis for the request, Plaintiff proffered: (1) the extent of discovery completed; (2) the parties' diligence to that date; (3) the fact that this case is a complex derivative action; (4) the fact that the documents at issue were voluminous, tens-of-thousands of which still needed to be exchanged and reviewed; (5) that the ten named Defendants still needed to be deposed; (6) Plaintiff's counsel's rigorous litigation schedule; (7) the opportunity to coordinate remaining discovery with discovery to be conducted in the related securities fraud litigation, *Hubbard v. BankAtlantic Bancorp., Inc.*, Case No. 07-61542-CIV-Ungaro; (8) Plaintiff's counsel's opinion that the requested extension was necessary to prepare for trial; (9) the fact that Plaintiff's Motion was the first motion to extend any Scheduling Order deadline that had been filed by any party; and (10) that the Motion was unopposed.  (Dkt. # 47, pp.3-6).

Had Plaintiff's Unopposed Motion been granted, the discovery period would have been seven (7) days longer than originally requested by the parties in their Joint Scheduling Report. On May 26, 2009, the Court entered an Order denying Plaintiff's Unopposed Motion.  (Dkt. # 48).

Because Plaintiff was uncertain of the specific reasons underlying the Court's denial, Plaintiff filed a Motion to Reconsider Plaintiff's Unopposed Motion to Extend Dates Contained in Scheduling Order for Pretrial Conference and Trial.  (Dkt. #49).  In addition to the matters contained in Plaintiff's initial motion (Dkt. #47), Plaintiff provided the Court with the details of a personal matter heightening the need for the extension.  (Dkt. #48, pp.3-4).  Therein, Plaintiff requested a three (3) month extension.  (Dkt. #48, p.4).  Had Plaintiff's Motion to Reconsider been granted, the discovery period would have been eighty-three (83) days less than the parties originally requested in their Joint Scheduling Report.

On June 9, 2009, Defendants filed their Response in Opposition to Plaintiff's Motion to Reconsider (Dkt. #50), and on the same date this Court entered an Order denying Plaintiff's Motion to Reconsider.  (Dkt. #51).

Although discouraged, Plaintiff was not deterred.  Prior to the June 19, 2009 deadline, Mr. Hugo sat for his deposition and Plaintiff deposed Defendants Jarett S. Levan (Director, President (since 2007), CEO (since 2006) and Major Loan Committee member), Marcia K. Snyder (Executive Vice President and Major Loan Committee member); Valerie C. Toalson (Executive Vice President (since 2007) and CFO (since 2006)), and James A. White (Executive Vice President and CFO (until 2006)).  *See* Angelovich Affidavit at 6.

On July 1, 2009, the parties mediated this action in Miami, Florida, before Mark A. Buckstein.  Counsel for proposed Intervenor Albert R. Feldman ("Feldman"), Mr. Kenneth J. Vianale, attended the mediation.  At the end of the mediation, the parties reached a verbal agreement to resolve the *Hugo* action and informed the Court on July 8, 2009.  (Dkt. #58).  The parties have been ordered to file the appropriate Settlement Documents by August 10, 2009. (Dkt. # 63).

On July 8, 2009, Feldman filed his Motion to Intervene and Stay Proceedings and Incorporated Memorandum of Law ("Motion").  (Dkt. #59).

**B.**     **The State Action**

On October 1, 2008, Feldman filed the action *Feldman v. Levan*, Case No. 08-1077, in the Circuit Court, Broward County, Florida ("State Action").  *See* Motion at 1-2.  Shortly thereafter, Feldman agreed to stay the State Action.  *Id*. at 2.  Feldman claims, as the bases for his decision, that (1) "Florida provides for a stay of later-filed, related cases" and (2) "to avoid needless litigation with defendants over the issue."  *Id*. at 2.  Feldman notes that, at any point

thereafter, Feldman had the right to move to lift the agreed stay with 30 days' notice to the defendants. *Id.* Feldman did not provide Defendants the required notice until July 2, 2009. *Id.* Accordingly, as a result of Feldman's voluntary act, the State Action remained dormant from approximately October 1, 2008, through July 2, 2009.

Plaintiff first became aware of the State Action on June 25, 2009, as a result of a telephone call from Mr. Vianale and Mr. William Federman, counsel in the State Action. *See* Angelovich Affidavit at 7. At no time prior to June 25, 2009, had counsel in the State Action or anyone from their respective offices contacted, or attempted to contract, Plaintiff or Plaintiff's counsel regarding the *Hugo* action. *Id.*

On June 26, 2009, Plaintiff's counsel and Mr. Vianale spoke again regarding the *Hugo* action, and Plaintiff's counsel informed Mr. Vianale that mediation of the *Hugo* action would occur on July 1, 2009. *Id.* at 8. That same day, Mr. Vianale sent correspondence to Plaintiff and Defense counsel requesting attendance at the July 1, 2009 mediation. *Id.* Plaintiff informed Mr. Vianale that his attendance would be welcomed and provided the location and time for the mediation. *Id.* Mr. Vianale attended the mediation. *Id.*

## II.
### ARGUMENT

#### A.      The Law of Intervention

The Federal Rules of Civil Procedure provide for intervention upon "timely motion" by the proposed intervenor. FED. R. CIV. P. 24(a) & (b). The timeliness determination is comprised of four factors:

- The length of time during which the intervenor knew or reasonably should have known of its interest in the case before moving to intervene;

- The extent of prejudice to the existing parties as a result of the intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest;

- The extent of prejudice to the intervenor if its motion is denied; and

- The existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (1989).  The question of timeliness "is largely committed to the district court's discretion" and will be reversed only for an abuse of discretion. *United States v. Jefferson*, 720 F.2d 1511, 1516 (11th Cir. 1983).

Regarding the "interest" component of the "length of time" prong, the language of Rule 24 is clear and unambiguous—the interest considered is the property or transaction at issue in the case.  *See, e.g., Arvida Corp. v. City of Boca Raton*, 59 F.R.D. 316, 320-21 (S.D. Fla. 1973).

As Feldman acknowledges, the period of time analyzed under the "length of time" prong begins when the proposed intervenor knew or should have known of his interest in the litigation. *See* Motion at 4.  Knowledge of the pendency of an action, without appreciation of the potential adverse effect an adjudication of that action might have on a proposed intervenor's interests, does not preclude intervention.  *United States v. Jefferson*, 720 F.2d 1511, 1516.  However, when a proposed intervenor knows, at the early stages of the action, that their rights could be adversely affected, the timeliness clock starts ticking.  *See, e.g., id.*; *Campbell v. Hall-Mark Elec. Corp.*, 808 F.2d 775, 777-79 (11th Cir. 1987).  Factors to be consider include (1) whether the proposed intervenor had been, or had the ability to be, in contact with either party regarding the litigation, and (2) whether the proposed intervenor was involved in related litigation.  *Campbell*, 808 F.2d at 777-78 (distinguishing *Howard v. McLucas*, 782 F.2d 956 (11th Cir. 1986)); *Jefferson*, 720 F.2d at 516.

Prejudice to the existing parties as a result of the delay in filing the motion to intervene generally increases as the litigation progresses to trial, *i.e.*, a motion to intervene filed at the same time the parties have decided to resolve the litigation is highly prejudicial. *Brown v. Bush*, 194 Fed. Appx. 879, 882-83(11th Cir. 2006) (motion to intervene at final fairness hearing caused substantial prejudice to the existing parties); *Campbell*, 808 F.2d at 779 ("Intervention at this point would only jeopardize a legitimately negotiated, accepted and approved settlement."); *Jefferson*, 720 F.2d at 1517.

The "thrust" of the prejudice to the proposed intervenor "inquiry must be the extent to which a final judgment in the case may bind the movant <u>even though</u> he is not adequately represented by an existing party." *Jefferson*, 720 F.2d at 1517 (emphasis added). Specifically,

> This third factor thus has weight only in the situation where (a) the judge cannot anticipate the extent to which a final judgment will bind the movant, or (b) the judge finds that although the movant has an identical interest with a party, he has a sufficiently greater stake than the party that the party's representation may be inadequate to protect the movant's interest. Otherwise, where the movant has no identity of interest with a party and thus could not be bound, or where his interest is identical with a party and consequently he is adequately represented, we would find no prejudice sufficient to give weight to the third factor.

*Id*. Moreover, if a proposed intervenor possesses a right to object to and appeal a final judgment, despite the denial of his motion to intervene, the prejudice to the proposed intervenor is significantly reduced. *Brown*, 194 Fed. Appx. at 883.

If the timeliness factor is satisfied, the Federal Rules of Civil Procedure permit intervention of right when the proposed intervenor:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2).

As set forth in *Jefferson*, the adequacy of representation is directly tied to the alignment of interests—when the intervenor's interest is identical with a party, the proposed intervenor is adequately represented.  720 F.2d at 1517.  Significantly, adequacy of representation does not focus on whether the proposed intervenor is pleased with the outcome of the underlying suit. *See, e.g., United States v. Georgia*, 19 F.3d 1388 (11th Cir. 1994); *Chiles v. Thornburgh*, 865 F.2d 1197 (1989).  The foregoing opinions make this point clear.

In *Georgia*, litigation over a 1973 permanent injunction restraining a school board from taking any action perpetuating segregation resumed when the United States filed a motion to enforce to judgment.  *Georgia*, 19 F.3d at 1390-91.  The motion to enforce, filed in 1989, arose from the school board's failure to use funds earmarked for construction of a single, desegregated high school.  *Id.* at 1390.  A newly elected school board was seated in January 1993.  *Id.* at 1391. This newly composed board voted to pursue the construction and consolidation plan at issue in the litigation.  *Id.*  Immediately after the court ordered funds released to begin construction of the school, "a civic group called 'Citizens for Community Schools of Meriweather County,' moved to intervene as defendants and to enjoin the distribution of the money to the school district."  *Id.* The proposed intervenor argued that:

> [T]he new Board, weary of the continuing litigation, had caved in to the government's demand for a consolidated high school and no longer adequately represented the interests of those citizens of Meriweather County opposed to the plan.

*Id.*

Affirming the district court's denial of intervention, the court began with the legal presumption "'that a proposed intervenor's interest is *adequately represented* when an *existing party pursues the same ultimate objective* as the party seeking intervention.'"  *Id.* at 1394 (quoting *Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993)) (emphasis added).

9

The court found that "the ultimate purpose [of the school board and proposed intervenors] is to eliminate the detrimental impact upon students caused by segregation," and affirmed the denial of intervention.  *Id*.  The court reached this conclusion despite the fact that "the various positions taken by the Board during the course of this litigation, first in favor of consolidation, then against it, then in favor once more, can easily be traced to its changing composition."  *Id*. at 1393.

In *Chiles*, the underlying litigation related to the allegedly illegal operation of a federal prison located in Dade County, Florida.  865 F.2d at 1200.  Dade County and Florida's governor were allowed to intervene relatively early in the case, and alleged the same facts and sought relief similar to the original plaintiff.  *Id*. at 1202.  Thereafter, non-felon detainees of the facility, individual homeowners in the vicinity of the prison and a homeowner's association moved to intervene.  *Id*.  The district court denied all three motions to intervene.  *Id.*

In reversing the denial of the detainees' motion to intervene, the Eleventh Circuit recognized that, "[b]ecause the detainees' interest is similar to, but not identical with, that of Dade County, we must determine whether the detainees' interest is adequately represented."  *Id*. at 1214.  The court held:

> The fact that the interests are similar does not mean that approaches to litigation will be the same.  *Dade County may decide not to emphasize the plight of the aliens held at Krome but focus instead on the effect that Krome has on those who live outside its walls*.  After all, *Dade County is mainly concerned with the expenditures that have to be made because of Krome*.  We conclude that this possibility sufficiently demonstrates that the detainees' interests are not adequately represented.

*Id*. at 1214-15 (emphasis added) (citations omitted).  In other words, although the interests were similar, it was unlikely that the plaintiff and proposed intervenors would pursue the same ultimate objective.

The Eleventh Circuit reached the opposite result when affirming the denial of the intervention request by the individual homeowners and homeowners association:

> Unlike the detainees, the homeowners and the Homeowners' Association have an interest which is *identical* to Dade County: the prevention of riots and escapes from Krome and the protection of nearby residents.  There is no indication whatsoever that the representation rendered by Dade County would be inadequate.  *See Athens Lumber*, 690 F.2d at 1366 (where interest of proposed intervenor is the same as that of one of the parties, court can presume that the interest is adequately represented).

*Id*. at 1215.

The point of the foregoing is this—that the adequacy of representation focuses on how closely the interests of the plaintiff and those of the proposed intervenor are aligned.  This is significant because, as addressed below, the entirety of Feldman's timeliness and adequacy arguments are premised on the incorrect assumption that his "interest" in this litigation is ensuring that it resolves in the manner he desires.

**B.      Feldman's Motion is Untimely**

1.      The Length of Time During Which Feldman Knew or Reasonably Should Have Known of His Interests in This Case Before Moving to Intervene

As Feldman acknowledges, the timeliness analysis considers "the length of time during which the intervenor knew or should have known of an interest in the litigation before moving to intervene."  *See* Motion at 4-5 (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).  However, Feldman argues that he did not know, and could not have known of his interest until June 19, 2009.  *See* Motion at 5.  This is incorrect.

The property at issue in this case is the derivative cause of action for breach of fiduciary duty against the ten named Defendants.  *See, e.g*., Motion at 6.  As a current shareholder of BankAtlantic, Feldman clearly possesses an interest related to the derivative cause of action for breach of fiduciary duty asserted in this case.

This fact was known to Feldman no later than October 1, 2008, or very shortly thereafter. Feldman filed the State Action on October 1, 2008.  *See* Motion at 2.  Although Feldman describes the State Action as more comprehensive, he admits that "the issues are similar— BankAtlantic's right to recover from defendants for their breaches of fiduciary duties."  *Id.* at 6. Thus, Feldman was aware of his interest in the *Hugo* Action on or shortly after October 1, 2008. Moreover, it is beyond peradventure that Feldman was aware, at that time, that the resolution of the *Hugo* Action, whether favorable or not, may as a practical matter impair or impede his ability to protect this interest.

The vast majority of Feldman's Motion to Intervene is dedicated to excusing his delay in filing the motion to intervene, and an attempt to extend the date of his "knowledge" to June 19, 2009.  When Feldman's actions are placed in their proper context, it is clear that his delay should not be excused.

First, Feldman attempts to justify his delay by redefining his "interest" in this case:

- "Intervenor . . . seeks to protect derivative claims that have already withstood challenge on several grounds on defendants' motion to dismiss."  *See* Motion at 6.

- "Plaintiff Feldman's counsel only recently became aware of the precarious posture of this action.  The lack of document discovery was not earlier apparent from the docket sheet because discovery requests are not to be filed with the Clerk."  *Id.* at 3.

- "It was only after monitoring the status of the case and learning of this Court's rulings on discovery (e.g., DE 57, Order on Motion to Compel), that Plaintiff Feldman became aware that intervention was need to protect the interests of the Company and its shareholders."  *Id.*

As set forth above, the property at issue in this case is the derivative cause of action for breach of fiduciary duty, an interest that Feldman was aware of on October 1, 2008.  Feldman's suggested alternative interests would stand Rule 24 on its head.  Indeed, Feldman's June 19,

2009 argument would allow parties in identical related litigation to sit on the sidelines and seek intervention only if, and when, they determined that the case would not revolve as they desired. Neither the language of Rule 24 nor interpretive case law supports such an argument.

Second, Feldman appears to argue that the stay of the State Action contributed, in some way, to his delay in filing his Motion. Feldman claims that he agreed to stay his case because Florida provides for a stay of later-filed, related cases and in order to avoid needless litigation with defendants over the issue. Although not expressly stated, Feldman clearly suggests that the grant of a stay in the State Court action was a foregone conclusion, and certainly not one worth litigating. This is incorrect.

Florida trial courts have broad discretion in granting or denying stays of subsequently-filed actions. *Office Depot v. Marsh & McClennan Co.*, 937 So. 2d 1139, 1140 (Fla. Dist. Ct. App. 2006); *Sauder v. Rayman*, 800 So. 2d 355, 358 (Fla. Dist. Ct. App. 2001). In making the determination, the court has the power to weight the circumstances for and against a stay. *Office Depot*, 937 So. 2d at 1140. Factors to be considered include the identity of the parties and issues, whether the federal and state courts have concurrent jurisdiction, and whether the case involves dueling class actions. *Id.*; *Sauder*, 800 So. 2d at 358.

The fact of the matter is that Feldman deliberately chose to stay the State Action and deliberately chose to wait and see what occurred in this case. When Feldman determined that the outcome was not what he desired, he stepped off the sidelines and filed his Motion.

Third, even if the Court were to accept Feldman's claims that his lack of knowledge regarding the precarious posture of this action arose because the lack of documentary discovery was not earlier apparent from the docket sheet, the resulting lack of knowledge, if any, falls squarely on Feldman. Feldman claims that he was "monitoring the status of the case," but

apparently only did so through an occasional review of the docket sheet.  *See* Motion at 3.  Given that Feldman was aware of this action on or about October 1, 2008, Feldman could have picked up the telephone and asked Plaintiff's counsel about the status of the case, or made the same request through email or a letter.  He did not.  Neither Feldman nor his counsel attempted to communicate with Plaintiff's counsel in any manner prior to June 25, 2009, a mere five days prior to the mediation of this action.  Accordingly, the "knowledge" Feldman claims he lacked was available to him if he had only picked up the phone and asked.

Based on the foregoing, the issue of Feldman's timeliness must be resolved by reference to Feldman's actions beginning on October 1, 2008, the date on which he admits he knew of his interest in the *Hugo* Action.  Accordingly, Feldman filed his Motion to Intervene 8 months and 8 days after he knew of his interest in the *Hugo* Action.  This factor weighs against a finding of timeliness.

         2.      <u>The Extent of Prejudice to the Existing Parties as a Result of Feldman's Failure to Move for Intervention as Soon as He Knew or Reasonably Should Have Known of His Interests</u>

Feldman moved to intervene in the *Hugo* Action after Plaintiff and Defendant agreed to settle this matter.  Plaintiff and Defendants reached an agreement to resolve the *Hugo* Action at the July 1. 2009 mediation, a mediation attended by Feldman's counsel.  Although resolution occurred after Feldman's counsel left the mediation, Feldman's counsel was advised of the settlement that same day.  Feldman filed his Motion to Intervene seven days later on July 8, 2009.

The extent of prejudice to Plaintiff and Defendants as a result of Feldman's failure to move for intervention as soon as he knew or reasonably should have known of his interest is

patent.  *Brown*, 194 Fed. Appx. at 882-83; *Campbell*, 808 F.2d at 779; *Jefferson*, 720 F.2d at 1517.  Accordingly, this factor weighs against a finding of timeliness.

3.      <u>The Extent of Prejudice to Feldman if His Motion is Denied</u>

Feldman argues that the prejudice to him if the Motion is denied is great because "the result of this action may have a binding effect on the corporation's claims."  *See* Motion at 5. Feldman's argument actually demonstrates that he will not be prejudiced at all, as that term is used in the Rule 24 analysis.

The thrust of this inquiry is the extent to which a final judgment in this case may bind Feldman **even** **though** he is not adequately represented by an existing party.  *Jefferson*, 720 F.2d at 1517.  Simply stated, prejudice will not be found under this factor when the interest of a proposed intervenor is identical to that of an existing party.  *Id.*  Because, by Feldman's own admission, his and Plaintiff's interests are identical, there is no prejudice to Feldman if his motion is denied.

Moreover, because the denial of Feldman's Motion does not divest him of the ability to object to and appeal any final judgment in this case, any remaining prejudice would be eliminated.  *Brown*, 194 Fed. Appx. at 883.  Accordingly, this factor weighs against a finding of timeliness.

Based on the foregoing, it is clear that none of the foregoing factors weigh in favor of a finding that Feldman's Motion is timely.   Accordingly, Plaintiff respectfully requests that Feldman's Motion be denied on this basis.

**C.**     **Feldman's Interest in this Litigation**

Plaintiff agrees that Feldman has a direct, substantial, legally protectable interest in this action.  *See* Motion at 6.  However, Plaintiff disagrees with Feldman's characterization of that

interest.   Specifically, Feldman claims that "he seeks to protect derivative claims that have already withstood challenge on several grounds on defendants' motion to dismiss."   *Id*.   That is incorrect.

As set forth in Section II(A) and (B)(1), *supra*, Feldman's interest in this case is the same as Plaintiff's—the property at issue in this case is the derivative cause of action for breach of fiduciary duty against the ten named Defendants.   Feldman's redefines his interest solely to attempt to satisfy the timeliness and adequacy requirements.   The Court should reject those attempts.

D.      **The Impairment of Feldman's Interest**

Plaintiff agrees that disposing of this action may as a practical matter impair or impeded Feldman's interests in the derivative cause of action for breach of fiduciary duty against the ten named Defendants.

E.      **Adequacy of Representation**

As set forth in Section II(A), *supra*, adequacy of representation does not focus on whether the proposed intervenor is pleased with the outcome of the underlying suit.   Rather, adequacy of representation is directly tied to the alignment of interests—when the proposed intervenor's interest is identical to that of an existing party, the proposed intervenor has been adequately represented.   In this action, Plaintiff and Feldman share an identical interest— enforcement of the derivative claims against the named Defendants.   Accordingly, there is a legal presumption that a Feldman's interest has been adequately represented.   *Georgia*, 19 F.3d at 1394.   Further, as set forth in Section II(A), Feldman's argument that the lack of document discovery equates to a lack of adequate representation simply is not a part of the inquiry.   Accordingly, Feldman's interests have been adequately represented.

Moreover, the precise argument that Feldman actually advances—that his interests were not adequately represented because he is not pleased with the outcome of the litigation—has already been rejected by the Eleventh Circuit.  Feldman's argument is identical to those advanced by the homeowners and homeowners' association in *Chiles*.  *Chiles*, 865 F.2d at 1215 ("Unlike the detainees, the homeowners and the Homeowners' Association have an interest which is *identical* to Dade County: the prevention of riots and escapes from Krome and the protection of nearby residents.  There is no indication whatsoever that the representation rendered by Dade County would be inadequate.").

Finally, to the extent that the specifics of Plaintiff's conduct in this action were relevant to the analysis, which they are not, that conduct does not demonstrate a lack of adequate representation.  At the beginning of this litigation, Plaintiff and Defendants agreed that a period of one-year was required to complete discovery in a case of this complexity, and that the discovery period should begin after the Court ruled on Defendants' motion to dismiss to avoid the waste of their respective resources in the event the action was dismissed.  On September 12, 2009, the Court ordered that discovery be completed by June 19, 2009.  As it turned out, this discovery deadline was 175 days shorter than the discovery that the parties had requested.

Defendants' motion to dismiss was denied on December 12, 2008.  Defendants' filed their Answer on January 12, 2009.  Thus, the issues in this litigation were joined on January 12, 2009.

Thereafter, Initial Disclosures were exchanged and the parties had numerous discussions related to the disclosure of electronically stored information, including the form or forms in which it should be produced.  On May 4, 2009, Plaintiff provided Defendants a detailed letter setting forth Plaintiff's requests regarding the format and manner in which electronically stored

information was to be produced and/or identified pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure.

Despite these efforts, and due to a personal matter later revealed to the Court, Plaintiff determined there was not sufficient time to complete discovery by the June 19, 2009.  On May 22, 2009, Plaintiff filed an unopposed motion requesting an extension of the discovery deadline by approximately six 6 months.  This request would have resulted in a discovery period seven days longer than originally agreed to and requested by the parties.  The motion was denied.

Plaintiff thereafter filed an opposed motion to reconsider, providing the Court with the details of a personal matter heightening the need for the extension.  Plaintiff requested a three-month extension of the discovery deadline, which would have resulted in a discovery period eighty-three days shorter than originally agreed to and requested by the parties.  The motion was denied.

Clearly, Plaintiff was discouraged by this denial.  However, rather than quitting at that point, Plaintiff sat for his deposition and deposed the four Defendants Plaintiff believed had the most knowledge of the facts underlying the action.

While not ideal, Plaintiff attended mediation on July 1, 2009 having conducted these four depositions and with the benefit of a substantial amount of publicly available documents obtained prior to and during the litigation.  Based on that information, Plaintiff chose to settle this action in the manner it did.

Plaintiff respectfully submits that Plaintiff's efforts in this regard were adequate. Feldman requests that this Court stay this action and allow Feldman to prosecute the related and pending State Action.  *See* Motion at 1.  Feldman seeks the stay of this action so that discovery can be conducted in the State Action, and argues that the request is particularly compelling

because discovery can be coordinated with the securities fraud class action to minimize any burden of Defendants.  *Id.*

In other words, Feldman requests the precise relief (and provides the same basis in support) Plaintiff requested through his motion for extension of time and motion to reconsider—that the Court allow more time for discovery and that discovery can be coordinated with the securities fraud class action.  (*See* Dkt. #47 & 49).  The Court already has considered and rejected that request.

It is disingenuous for Feldman to argue that Plaintiff has inadequately represented his interest when Plaintiff requested the precise relief he now seeks.  This is particularly so because Feldman, with knowledge of this litigation and its potentially preclusive effect, voluntarily stayed the State Action in favor of this case.

Based on the foregoing, it is evident that Feldman cannot establish that Plaintiff failed to adequately represent his interest in this litigation.

**F.      Feldman's Citation to Rule 24's Advisory Committee Notes**

Feldman attempts to support his Motion, in part, by reference to the Advisory Committee Notes to Federal Rule of Civil Procedure 24.  *See* Motion at 7-8.  Feldman argues these notes expressly recognize that courts should allow intervention of right when another shareholder can show that the representative party is inadequate.  *Id.*  While the notes stand for the general proposition Feldman advances, those notes do not support intervention for two reasons.

First, as set forth above, Feldman cannot demonstrate inadequate representation.  Second, Feldman's citation continues to ignore the actual focus of the adequacy analysis.  As set forth in Sections II(A), (B)(1) & (E), *supra*, the adequacy inquiry focuses on the alignment of interests and, when the intervenor's interest is identical to that of an existing party, the proposed

intervenor has been adequately represented.  Thus, Rule 24's admonition that a shareholder should be permitted to intervene if not adequately represented does not alter the conclusion that his Motion should be denied.

### G.    Permissive Intervention Should Be Denied

Permissive intervention requires a timely motion.  Fed. R. Civ. P. 24(b).  When considering a request for permissive intervention, the court must consider whether the intervention will unduly delay or prejudice the adjudications of the original parties' rights.  *Id*. As set forth in Sections II(A) & (B), *supra*, Feldman's Motion is untimely.  As set forth in Section II(B), *supra*, the prejudice to the existing parties if Feldman's motion is granted is substantial and significant.  Accordingly, Plaintiff respectfully submits that Feldman's request for permissive intervention likewise be denied.

### III.
#### CONCLUSION

Based on the foregoing, Feldman has failed to demonstrate that his Motion is timely, has failed to demonstrate that his interests have not been adequately represented in the *Hugo* action, and has failed to establish that the original parties to this action will not suffer significant prejudice if his Motion is granted.  Accordingly, Plaintiff respectfully requests that this Court

deny Albert R. Feldman's Motion to Intervene and Stay Proceedings and Incorporated Memorandum of Law.


Dated:  July 27, 2009

Respectfully submitted,


_____/s/ James P. Gitkin_____
SALPETER GITKIN, LLP
James P. Gitkin (Fla. Bar # 570001)
jim@salpetergitkin.com
Eric T. Salpeter (Fla. Bar. # 178209)
eric@salpetergitkin.com
Museum Plaza – Suite 503
200 South Andrews Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 467-8622
Facsimile: (954) 467-8623

NIX, PATTERSON & ROACH, LLP
Jeffrey J. Angelovich
3600 B. North Capital of Texas Highway
Suite 350
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335

NIX, PATTERSON & ROACH, LLP
Bradley E. Beckworth
Susan Whatley
Brad Seidel
205 Linda Drive, P.O. Box 679
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-5389

Counsel for Plaintiff

KEIL GOODSON, P.A.
John C. Goodson
Matt Keil
406Walnut Street
P.O. Box 618
Texarkana, Arkansas 71854
Telephone: (870) 772-4113
Facsimile: (870) 773-2967

NELSON, ROSELIUS, TERRY, O'HARA
& MORTON
Jason E. Roselius
Douglas A. Terry
Derrick L. Morton
Guy R. Wood
P.O. Box 138800
Oklahoma City, Oklahoma 73113
Telephone: (405) 705-3600
Facsimile: (405) 705-2573

Additional Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on July 27, 2009, we filed the foregoing document electronically with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Adam M. Schachter, Esq., Eugene E. Stearns, Esq., and Richard B. Jackson, Esq., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Museum Tower, Suite 2200, 150 West Flagler Street, Miami, FL  33130 via transmission of Notice of Electronic Filing generated by CM/ECF.

                                        <u>/s/ James P. Gitkin</u>