**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**
Case No. 08-CV-61018-Ungaro/Simonton

| | |
|---|---|
| D.W. HUGO, Derivatively on behalf of Nominal Defendant BANKATLANTIC BANCORP, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ALAN B. LEVAN, JARETT S. LEVAN, JAY C. C. MCCLUNG, MARCIA K. SNYDER, VALERIE TOALSON, JAMES A. WHITE, JOHN E. ABDO, D. KEITH COBB, STEVEN M. COLDREN, and DAVID A. LIEBERMAN, | ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| BANKATLANTIC BANCORP, INC., | ) ) |
| Nominal Defendant. | ) ) |

**STATE DERIVATIVE PLAINTIFF ALBERT R. FELDMAN'S OBJECTION TO
DEFENDANTS' AND PLAINTIFF'S STIPULATION OF SETTLEMENT AND JOINT
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

| | |
|---|---|
| **VIANALE & VIANALE LLP** | **FEDERMAN & SHERWOOD** |
| Kenneth J. Vianale | William B. Federman |
| Fla. Bar No. 169688 | 10205 N. Pennsylvania Avenue |
| 2499 Glades Road, Suite 112 | Oklahoma City, Oklahoma 73120 |
| Boca Raton, FL 33431 | Telephone: (405) 235-1560 |
| Telephone: (561) 392-4750 | Facsimile: (405) 239-2112 |
| Facsimile: (561) 392-4775 | |

*Attorneys for Objector State Plaintiff Albert R. Feldman*

I.     INTRODUCTION

Albert R. Feldman ("Feldman" or "State Plaintiff"), a current shareholder of BankAtlantic Bancorp, Inc. ("BankAtlantic" or the "Company") and the plaintiff in the concurrent state court derivative action, respectfully submits this objection to the proposed settlement (the "Proposed Settlement")[1] and Federal Derivative Plaintiff's and Defendants' Joint Motion for Preliminary Approval of Settlement ("Joint Motion").

This case has been a Comedy of Errors. The parties now want to cap the farce with court approval of a "settlement" providing no relief or recovery in exchange for mutual releases. The real party in interest, the Company, gets nothing for abandoning its legal claims, and the individual defendants, as well as those parties named as defendants in the State Action but not this case,[2] get a full release from liability. The settlement is plainly a sham, as we show below, and this Court should not preliminarily approve it.

To begin with, the Court upheld the sufficiency of the complaint against a vigorous motion to dismiss. But thereafter, D.W. Hugo, the Federal Derivative Plaintiff, did nothing. A document request was never even served on defendants, and no subpoenas were issued, not even to the most obvious third-party in a case alleging financial statement fraud – the Company's auditor, PricewaterhouseCoopers. Instead, dust gathered on the case for months.

At the last minute before discovery's close, the Federal Derivative Plaintiff sought to extend the June 19, 2009 cut-off date, telling the Court that "tens-of-thousands of documents" had yet to be obtained and reviewed from the Company and third parties. *Plaintiff's Unopposed Motion to Extend Dates Contained in Scheduling Order for Pre-Trial Conference and Trial*, DE

---

[1] The "Proposed Settlement" refers to the Stipulation of Settlement dated August 24, 2009, Dkt. No. 71-2.

[2] Those additional parties are Mary E. Ginestra, Willis N. Holcombe, Charlie C. Winningham, II, and Bruno DiGiulian.  *See* pages 11-12 *infra*.

1

47, at 5. When, on June 9, 2009, the Court denied the motion, the Federal Derivative Plaintiff tried in the remaining ten days to create the appearance of a factual record. Counsel took 4 depositions without the benefit of any internal documents. The result is plain for the Court to see. The proffered deposition transcripts reveal only a series of insipid softball questions followed by self-serving answers. Three of the four depositions were less than 2.5 hours long. The Federal Derivative Plaintiff's counsel candidly admitted that the depositions were of little value because he lacked internal documents and the witnesses were obviously prepared to answer questions knowing that. Vianale Decl., ¶2.[3] The Federal Derivative Plaintiff did not even depose *six* of the named defendants (A. Levan, McClung, Abdo, Cobb, Coldren and Lieberman), not to mention other witnesses with knowledge.

Because he faced dismissal at summary judgment, and the certainty of a motion for attorneys' fees (*See* D.W. Hugo Tr., Ex. F, at 49-51), counsel for the Federal Derivative Plaintiff had a gun to his head and entered into this "settlement" which provides nothing to the Company, but insulates counsel and the individual defendants and unnamed officers and directors from all liability.

The Court should not preliminarily approve this settlement as fair, reasonable and adequate for several important reasons.

*First*, the Federal Derivative Plaintiff has shown himself to be an inadequate representative for failing to diligently prosecute the case. Feldman has briefed this issue at length in his motion to intervene, filed July 8, 2009. *See* DE 59 & 69. Under Rule 23.1, the Court should not approve the compromise of valuable claims belonging to the Company when no consideration has been given. Instead, the Court should grant Feldman's pending motion to

---

[3] "Vianale Decl." refers to the declaration of Kenneth J. Vianale, dated August 6, 2009 [DE 70], previously submitted in support of Feldman's motion to intervene [DE 59], and attached hereto as Exhibit A.

2

intervene, stay or dismiss this case *without prejudice*, and allow Feldman to prosecute the Company's claims in the related Florida State Court Action.

*Second*, the claims at issue have never been investigated – except by the individual defendants who are the alleged wrongdoers here. The board of directors of BankAtlantic originally rejected the written demand to investigate the allegations. [DE 43 at 9-10]. Then the Federal Derivative Plaintiff let the case lapse into senility. Faced with a motion for attorneys' fees (Vianale Decl., ¶ 2; Joint Motion, at 12), counsel for the Federal Derivative Plaintiff agreed to release defendants in exchange for a release for himself and his client. Finally, to ensure that *no one ever delves into the facts*, the BankAtlantic board arranged for dual representation. The Company (the alleged *victim*) and the individual defendants (the alleged *wrongdoers*), are represented by the same counsel, even though this is plainly a conflict of interest. *See, e.g., Stepak v. Addison*, 20 F.3d 398, 404-405 (11th Cir. 1994); *Klein v. Broadhead*, Case No. 02-20170, 2004 WL 302292 at *22 (S.D. Fla. Feb. 5, 2004) (Gold, J.); *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1188 (N.D. Cal. 1993). The conflict of interest is particularly significant here because the complaint alleges the individual defendants intentionally violated "their fiduciary duties of *good faith and loyalty*." (Complaint, DE 1, at 11, ¶30 & ¶¶39, 56, 59, 88-89) (emphasis added). *See* 5 MOORE'S FEDERAL PRACTICE §23.1.15 (3rd ed. 2005) (allegations of "criminal wrong, fraud, or a breach of the duty of loyalty typically require independent counsel" and even in doubtful cases, separate counsel for the individual defendants and the corporation should be obtained).

*Finally,* the deposition transcripts show that the parties have no basis to conclude that the claims have no merit. On the contrary, the examinations only reveal the Federal Derivative Plaintiff's inadequacy. Most of the questioning involved showing the witness the complaint or an

SEC filing and asking the witness whether he or she agreed or disagreed with the statement. Dip into the transcripts anywhere and the result is the same: light and breezy. Plaintiff's counsel was clearly not prepared for a vigorous examination. The Federal Derivative Plaintiff never explains how he analyzed the strength of his claim of financial statement fraud (*Eg*., Complaint, ¶75), without requesting a single document from the Company or a third party.

The Court should not preliminarily approve the settlement. There is no basis to cause the Company to incur the cost of notice of a settlement that was procured under the circumstances presented here.

## II.   FACTS

On May 22, 2009, the Federal Derivative Plaintiff sought a six-month discovery extension because the "discovery needed to prepare this matter for trial cannot be completed under the Court's current schedule . . . ." [DE #47, at 4]. The Federal Derivative Plaintiff stated that this is a "complex derivative action wherein the Plaintiff has sued ten (10) individuals alleging . . . reckless lending practices." *Id.* The Federal Derivative Plaintiff told the Court that the documents to prove his case were "voluminous" and included: "documents related to internal and external audits of BankAtlantic's financials, documents and minutes from Board of Directors' meetings, documents related to BankAtlantic's internal controls, documents and minutes from BankAtlantic's Major Loan Committee, documents related [to] BankAtlantic's SEC filings, documents related to Steeplechase, and documents related to BankAtlantic's underwriting standards." *Id.* According to the Federal Derivative Plaintiff, as of May 22, 2009, "tens-of-thousands of documents still need to be exchanged and reviewed," *id.* at 4-5, not to mention other "relevant documents in the possession of third parties." *Id.* at 5. The Federal Derivative Plaintiff also told the Court that "a minimum of an additional ten (10) individuals will

be deposed in preparation for trial." *Id.*

Although these documents were critical, the Federal Derivative Plaintiff never served any formal discovery requests to obtain them, and reached no agreement with defendants for their production. *See* Order on Motion to Compel, DE #57, at 2-3. On June 9, 2009, the Court denied the Federal Derivative Plaintiff's motion to reconsider the Court's earlier refusal to extend the June 19, 2009 discovery cut-off. DE #51.

On June 25, 2009, counsel for the Intervenor contacted Attorney Jeffrey Angelovich, counsel for the Federal Derivative Plaintiff. Vianale Decl., ¶2. Angelovich conceded that the case was not in a good posture given the lack of documents and the close of discovery. *Id.* Mr. Angelovich was invited to join in the prosecution of the shareholder derivative action in Florida State Court. *Id.* Mr. Angelovich stated that his firm had taken four depositions in his case, but that they had no document discovery from defendants to use at the depositions. As a result, Mr. Angelovich said, the depositions revealed little useful information. *Id.* He noted that the witnesses had obviously been prepared to answer knowing that plaintiff's counsel had no documentary evidence to contradict their testimony. *Id.* Mr. Angelovich sounded receptive to the idea of joining in the prosecution of the Florida State derivative case, but said he would need court approval under Rule 23.1 to dismiss his case. Mr. Angelovich stated that he was concerned about the effect of a voluntary dismissal on "reverse attorneys' fees" under the Florida derivative statute, Section 607. *Id.* He stated that defendants had told him that they would seek attorneys' fees from his firm under this statute. *Id.* In their answer, defendants request attorneys' fees under Fla. Stat. § 607.07401(5).[4] *Id.;* DE 46, at 12.

---

[4] That statute says: "On termination of the proceeding, the court may require the plaintiff to pay any defendant's reasonable expenses, including reasonable attorneys' fees, incurred in defending the proceeding if it finds that the proceeding was commenced without reasonable cause."

5

## **ARGUMENT**

### I.  THE PROPOSED SETTLEMENT DOES NOT WARRANT PRELIMINARY APPROVAL

It is well-established, that during the preliminary approval stage a court must "conclude that the settlement of the claims on the agreed upon terms is within the range of possible approval." *In re NIVIDIA Corp. Deriv. Litig.*, No. 06-06110, 2008 WL 5382544, at *2. A proposed settlement is within the range of possible approval if it is "fair, reasonable and adequate." *Id.* Here, the record before the Court is devoid of any support whatsoever that the Proposed Settlement is fair, reasonable and adequate, thus **preliminary approval is not warranted**. Feldman's objections to the Proposed Settlement demonstrate that no evidence shows that the Proposed Settlement is even within the range of preliminary approval.

#### A.  There Is Collusion Among the Federal Derivative Parties

##### 1.  The Federal Derivative Plaintiff is Inadequate and the Parties Colluded

The Federal Derivative Plaintiff is apparently colluding with defendants to extinguish the individual defendants' liabilities through a bogus "settlement" which will also insulate Federal Derivative Plaintiffs from liability for payment of defendants' attorneys' fees. The Federal Derivative Plaintiff's neglect of duty in this litigation created a real and incurable conflict of interest. Counsel for the Federal Derivative Plaintiff, Mr. Jeffrey Angelovich, has conceded the precarious position of the case. *See* Vianale Decl., ¶2. As a result, he became concerned about the imposition of attorneys' fees. *Id.,* ¶2. There is a strong inference that the threat of having to pay defendants' attorneys' fees colored the Federal Derivative Plaintiff's prosecution of this case, when it became clear on June 9, 2009 that the Court would prohibit discovery beyond June 19, 2009. Once the threat of a fee award loomed, the Federal Derivative Plaintiff's interests (and

6

those of his counsel) were no longer aligned with the other shareholders' interests.  On the contrary, the Federal Derivative Plaintiff and his counsel labored under a conflict of interest that caused them to pursue the best interest for themselves, not the Company and its shareholders. As a result, the Proposed Settlement gives nothing to the Company or its shareholders, and was itself a direct result of the representative's inadequacy.

There is no dispute that the Federal Derivative Plaintiff let the merits discovery period pass without obtaining and reviewing basic documentary evidence. As a result, the Federal Derivative Plaintiff faced inevitable dismissal without supporting evidence, followed by an uncertain outcome on defendants' promised motion for attorneys' fees and expenses.  The posture the Federal Derivative Plaintiff put the case in caused him to shift his objective from seeking valuable relief *for the Company*, to securing valuable relief *for himself* in the form of mutual releases.  His lack of diligence in obtaining document discovery and the threat of "reverse attorneys' fees" drove the Federal Derivative Plaintiff to save himself at the expense of the Company's and shareholders' claims. As a result of this actual conflict of interest, and the consequent inadequacy, the Court should not grant preliminary approval of the Proposed Settlement.

### 2.      Defense Counsel is Conflicted Because They Represent Both the Directors and the Company

There is no question that in this case, the nominal defendant, BankAtlantic, should have separate representation.  Instead, the same law firm represents both the alleged wrongdoers – the directors – and the Company, which is alleged to have been wronged by the board's intentional breaches of fiduciary duty.  (*See* Complaint, ¶¶ 30, 39, 56, 59).  Under these circumstances, courts have recognized that a firm's dual representation of the Board and the Company creates

an inherent conflict of interest. *See Stepak v. Addison,* 20 F.3d 398, 404-05 (11th Cir. 1994) (dual representation of the company and the individual defendants is plainly improper); *Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304, 1316-17 (3d Cir. 1993) (when breach of duties of loyalty and good faith are alleged, counsel should not represent both the directors and the company); *Klein v. Broadhead,* Case No. 02-20170-CIV, 2004 WL 302292 at *22 (S.D. Fla. Feb. 5, 2004) (counsel for the alleged wrongdoing directors should not also represent the company in a shareholder derivative action); *In re Oracle Sec. Litig.,* 829 F. Supp. 1176, 1188 (N.D. Cal. 1993) (denying approval of derivative settlement and noting that dual representation is impermissible because it places defendants' counsel in an untenable position; "[i]f the same counsel represents both the corporation and the officer defendants, the interests of the corporation are likely to receive insufficient protection").

The fact that the Company does not have separate counsel to protect its interests is compounded by the Federal Derivative Plaintiffs' desire to escape liability for attorneys' fees. In their joint motion, the Board and the Federal Derivative Plaintiff actually underscore the conflict of interest. Entirely forgetting that the Company is the real party in interest, the directors, who have personal liability for the alleged wrongs, say that *they* will "enjoy significant benefits" because the settlement will "eliminat[e] the remote possibility of an adverse judgment" *against them.* (Joint Motion [DE 71], at 12). The Federal Derivative Plaintiff likewise says the settlement gives him a release against a "potential statutory claim for attorneys' fees." (*Id.*). But Bank Atlantic -- the real party in interest -- gets nothing, loses its claims, and has no separate counsel to speak for it.

The conflict of interest is particularly glaring here, because the Board of Directors rejected the pre-suit written demand to take action sent by the Federal Derivative Plaintiff. *See*

Order on Motion to Dismiss, DE 43, at 9-10.  The Board never considered the demand or created an independent litigation committee to evaluate it.  Instead, the directors ignored the demand, and then hired the same counsel to represent them and *the Company, the alleged victim.*  This conflict of interest is grounds alone to deny preliminary approval.  *See In re Oracle Sec. Litig.,* 829 F. Supp at 1188-1189.

### B. The Federal Derivative Plaintiff's Failure to Take Any Meaningful Discovery Provides Further Evidence that the Proposed Settlement Was Not Reached at Arm's Length

Despite the lack of document discovery during the merits period, nothing prevented the parties from engaging in confirmatory discovery to create a record that would show whether the claims asserted have merit.  This action challenges the Company's alleged practices of granting loans based on inflated land values and maintaining these inflated asset values on its public financial statements.  *See* Verified Shareholder Complaint, DE#1, at ¶¶5; 41-53.  Proof of these allegations necessarily depends on a thorough review of the relevant documents.  The Federal Derivative Plaintiff admitted that the underlying "documents related to Steeplechase" and tens of thousands of other documents, were needed to effectively prepare the case for trial.  [DE #47, at 4-5].

The Federal Derivative Plaintiff's self-serving attempt to characterize the deposition testimony as a "cogent explanation" which refutes the claims alleged is plainly wrong.  *See* Joint Motion at 4.  Even a cursory review of the deposition transcripts shows their worthlessness, because counsel had no internal documents regarding the Company's loan portfolio, loan loss reserves, meetings of the board, the loan committee, or the Audit Committee.

For example, Marcia K. Snyder confirmed that minutes were kept of the meetings of the officer loan committee and the major loan committee.  These minutes are significant because, as

9

Ms. Snyder confirmed, the major loan committee would have approved the Steeplechase loan, a large transaction and central issue here. But Federal Derivative Counsel did not have these or any related documents, and so Ms. Snyder's testimony yielded nothing, which is precisely what one would expect under the circumstances:

> Federal Derivative Counsel: Were minutes kept of the officer loan committee meetings?
>
> Synder:    Yes.
>
> \*\*\*
>
> Federal Derivative Counsel: Same thing for minutes of the major loan committee meeting?
> Snyder:    Yes.
>
> Federal Derivative Counsel: In addition to discussing whether loans should be approved, did the two committees also discuss loans that had already been approved but had become problematic?
>
> Snyder: There were occasions that did come up, yeah.
>
> \*\*\*
>
> Federal Derivative Counsel: Would the major loan committee have approved the loan to Steeplechase?
>
> Snyder: Yes. [*See* Snyder Transcript, DE 71-8, page 70 lines 9-11; 15-17, 18-23; page 86 lines 6-8.]

Counsel for the Federal Derivative Plaintiff conceded the worthlessness of deposing witnesses without the benefit of the underlying documents. *See* Vianale Decl., ¶2. By neglecting to formally request relevant documents, the Federal Derivative Plaintiff set the case up for failure. When the discovery doors closed behind him, the Federal Derivative Plaintiff faced certain dismissal on summary judgment and a motion for attorneys' fees. Hence this settlement – the Federal Derivative Plaintiff's lifeboat.

10

### C.     State Plaintiff Objects to the Settlement Terms

The Federal Derivative Plaintiff and defendants have attempted to extinguish State Plaintiff's viable claims through this sham settlement. The parties have negotiated a *res judicata* defense provision in the Stipulation and the proposed final order. This provision provides that "[t]he Stipulation and its exhibits and any order entered in connection therewith may be filed in this action or related litigation as evidence of the Settlement, or to enforce its terms or in any subsequent action against or by Nominal Defendant, Defendants or Released Parties to support a defense of *res judicata*, collateral estoppels, release or other theory of claim or issue preclusion or similar defense." *See* Stipulation at 11, Par. N, IV.F., VI; Proposed Final Order at DE 71-2, at p. 34, ¶25. Should the Court allow this sham settlement to go forward, it is clear the Federal Derivative parties have every intention of thwarting State Derivative Plaintiff from holding defendants liable for their wrongdoing.

Feldman also objects to preliminary approval because the Stipulation seeks to dismiss defendants and claims that are not even part of the Federal Derivative Action. The State Derivative Action names four additional director defendants that are not defendants in the Federal Derivative Action, namely: Mary E. Ginestra, Willis N. Holcombe, Charlie C. Winningham, II, and Bruno DiGiulian. Pursuant to the Stipulation, these additional four defendants will be released from all liability. "Released Parties" is defined in the Stipulation as Defendants, Nominal Defendant, and the past, present or future officers, directors, employees, partners, agents, attorneys, underwriters, investment bankers, advisors, insurers, associates, legal representative, heirs, predecessors, executors, successors, administrators, assigns or immediate families of any Released Party or its or his subsidiaries and affiliates. Thus, the "Released Parties" goes far beyond the named defendants of the Federal Derivative Action.

Additionally, the State Derivative Action asserts insider trading violations against two defendants John E. Abdo ("Abdo") and Alan B. Levan ("Levan"). Although Abdo and Levan are named as defendants in the Federal Derivative Action, there are no allegations of insider trading against them. Based on the definition of "Settled Claims" set forth in the Stipulation, these claims too will be dismissed if this settlement is approved, even though these claims were not asserted in the Federal Derivative Action.

### D. The Proposed Notice to the Shareholders Is Inadequate

The Court should not allow the Federal Derivative parties to disseminate the proposed Notice. The Company will be needlessly forced to expend money and resources to notify its shareholders of an obviously inadequate settlement. A notice to shareholders must present a fair recital of the subject matter and of the proposed terms. *Miller v. Republic National Life Insurance Co.*, 559 F.2d 426, 429 (5th Cir. 1977). Here the notice fails to explain to the Company's shareholders that the Proposed Settlement is the result of Federal Derivative Plaintiff's failure to adequately prosecute the derivative action. Furthermore, the proposed Notice does not even mention the State Derivative Litigation nor that parties will be released from all liability who are not even named in the Federal Derivative Action. Most importantly, the proposed Notice should make clear to BankAtlantic shareholders that the Company will recover nothing and that the only beneficiaries are the individual defendants, who stand to get a full release for free, and the Federal Derivative Plaintiff who can drop this botched case with a release from liability for defendants' attorneys' fees.

### II. CONCLUSION

For the reasons stated above, the Court should not grant preliminary approval of the Proposed Settlement.

Dated:  August 26, 2009					Respectfully submitted,

**VIANALE & VIANALE LLP**

 /s/ *Kenneth J. Vianale*
Kenneth J. Vianale (FBN 169668)
Julie Prag Vianale (FBN 0184977)
2499 Glades Road, Suite 112
Boca Raton, FL  33431
Telephone:  (561) 392-4750
Facsimile:   (561) 392-4775
kvianale@vianale.com

**FEDERMAN & SHERWOOD**
William B. Federman
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone:     (405) 235-1560
Facsimile:      (405) 239-2112
wbf@federmanlaw.com

*Attorneys for Objector*

## **CERTIFICATE OF SERVICE**

This is to certify that on August 26, 2009 I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants listed below:

- **Jeffrey Angelovich**
  jangelovich@npraustin.com
- **Bradley E. Beckworth**
  bbeckworth@nixlawfirm.com
- **James Paul Gitkin**
  jim@salpetergitkin.com
- **Richard Bryan Jackson**
  rjackson@swmwas.com,sfarmer@swmwas.com
- **Gordon McRae Mead , Jr**
  gmead@swmwas.com,jstamm@swmwas.com
- **Eric Todd Salpeter**
  eric@salpetergitkin.com
- **Adam Michael Schachter**
  aschachter@swmwas.com,tjordan@swmwas.com
- **Brad E. Seidel**
  bradseidel@nixlawfirm.com
- **Eugene E. Stearns**
  estearns@swmwas.com,jmejia@swmwas.com
- **Julie Prag Vianale**
  jvianale@vianalelaw.com,pwolner@vianalelaw.com,kvianale@vianalelaw.com
- **Susan Whatley**
  susanwhatley@nixlawfirm.com
- **Guy R. Wood**
  guywood@nrtlaw.com

I mailed a copy to the following additional attorneys of record, who are not enrolled in the CM-ECF system.

N/A

s/ Julie Prag Vianale
Julie Prag Vianale (FBN 0184977)
2499 Glades Road, Suite 112
Boca Raton, FL  33431
Telephone:  (561) 392-4750
Facsimile:   (561) 392-4775
jvianale@vianalelaw.com
