UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61018-CIV-UNGARO

D.W. HUGO, Derivatively on behalf of
Nominal Defendant BANKATLANTIC
BANCORP, INC.,

    Plaintiff,

v.

ALAN B. LEVAN, JARETT S. LEVAN,
JAY C. MCCLUNG, MARCIA K. SNYDER,
VALERIE TOALSON, JAMES A. WHITE,
JOHN E. ABDO, D. KEITH COBB, STEVEN
M. COLDREN and DAVID A. LIEBERMAN,

    Defendants,

and

BANKATLANTIC BANCORP, INC.,

    Nominal Defendant.

_____/

**REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT**

| | |
|---|---|
| NIX, PATTERSON & ROACH, LLP | STEARNS WEAVER MILLER WEISSLER |
| 3600 B. North Capital of Texas Highway |   ALHADEFF & SITTERSON, P.A. |
| Suite 350 | Museum Tower, Suite 2200 |
| Austin, Texas 78746 | 150 West Flagler Street |
| Telephone: (512) 328-5333 | Miami, Florida 33130 |
| Facsimile: (512) 328-5335 | Telephone:  (305) 789-3200 |
| | Facsimile:   (305) 789-3395 |
| *Attorneys for Plaintiff* | |
| *(additional counsel listed on service list)* | *Attorneys for Defendants* |

# TABLE OF CONTENTS

                                                                                                                                 Page

TABLE OF AUTHORITIES .................................................... ii

I.     INTRODUCTION ....................................................... 1

II.    ARGUMENT ........................................................... 3

          A.     The Settlement is Fair, Reasonable And Adequate ......................... 3

          B.     There Is No Collusion ............................................. 5

          C.     Plaintiff Hugo Is Adequate ......................................... 6

          D.     There Is No Conflict Of Interest ..................................... 8

          E.     The Proposed Notice Is Adequate .................................. 10

III.   CONCLUSION ....................................................... 10

CERTIFICATE OF SERVICE ................................................ 12

SERVICE LIST ........................................................... 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Bailey v. AK Steel Corp.*,
    No. 06cv468, 2008 WL 495539 (S.D. Ohio Feb. 21, 2008) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bell Atlantic Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Francisco v. Numismatic Guaranty Corp.*,
    No. 06cv61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) . . . . . . . . . . . . . . . . . . . . . . . 7

*Hubbard v. BankAtlantic Bancorp, Inc., et al.*,
    No. 07cv61542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re AOL Time Warner S'holder Deriv. Litig.*,
    No. 02cv6302, 2006 WL 2572114 (S.D.N.Y. Sep. 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Oracle Sec. Litig.*,
    829 F. Supp. 1176 (N.D. Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*In re Zoran Corp. Deriv. Litig.*,
    No. 06cv5503, 2008 WL 941897 (N.D. Cal. Apr. 7, 2008) . . . . . . . . . . . . . . . . . . . . . . . 6

*IUE-CWA v. General Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Klein v. FPL Grp., Inc.*,
    No. 02cv20170, 2004 WL 302292 (S.D. Fla. Feb. 5, 2004) . . . . . . . . . . . . . . . . . . . . . . . 9

*Leonhardt v. Arvinmeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lipuma v. American Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Stepak v. Addison*,
    20 F.3d 398 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

<u>Rules</u>

Fed. R. Civ. P. 23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Other Authorities</u>

NEWBERG ON CLASS ACTIONS § 11.51
    (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Plaintiff D.W. Hugo, Nominal Defendant BankAtlantic Bancorp, Inc., and Defendants Alan B. Levan, Jarett S. Levan, Jay C. McClung, Marcia K. Snyder, Valerie Toalson, James A. White, John E. Abdo, D. Keith Cobb, Steven M. Coldren and David A. Lieberman respectfully file this reply memorandum in support of their joint motion for preliminary approval of settlement.

## I.  INTRODUCTION

The parties in this case have negotiated a good faith, arm's length settlement following over a year of litigation. That settlement, as set forth in the joint motion for preliminary approval, is appropriate in light of the nature of the evidence as revealed during the course of the case, and is fair, reasonable and adequate in light of the applicable law governing court approval of such settlements under Rule 23.1. The undisputed record in this case — which was the product of a sufficient and meaningful investigation, including deposition testimony of key company executives and a review and analysis of the relevant public filings and the law — demonstrates that Plaintiff's likelihood of success on the merits is minimal. Applying the relevant preliminary approval criteria to this record, the settlement should be preliminarily approved and notice sent to BankAtlantic Bancorp's shareholders.

State Derivative Plaintiff Albert Feldman has objected to the preliminary approval of the settlement, though he does not — and could not — directly challenge any of the now undisputed facts set forth in the motion for preliminary approval. In fact, Feldman is unable to point to a single shred of evidence that would support any claim against any of the Defendants. Nor does Feldman offer any meaningful challenge to the parties' corresponding legal analysis of the relevant facts under Rule 23.1.[1]

---

[1] As an aside, having been denied the right to intervene, Feldman does not have a right to participate in this case greater than that of any other shareholder. Indeed, at this preliminary approval stage, this Court's inquiry is limited to whether the proposed settlement is fair, reasonable and adequate such that notice to the shareholders is required. That notice would alert all shareholders of a final fairness hearing, at which any and all shareholder objections, including Feldman's, could and should be heard.

Instead, Feldman — having chosen to both sit on the sidelines and decline to take the time to watch what was happening on the field — offers only rank speculation and Monday-morning quarterbacking as to what *might have* been discovered if only he *could have* litigated this case. Thus, according to Feldman, this Court should refuse to approve the settlement and bring this case to a screeching halt to allow a discovery fishing expedition in a different forum. This Court has already heard and rejected these same arguments.

In denying Feldman's motion to intervene, this Court became wise to the ploy:

> Feldman knew about his interest in the Federal Action, and its potential effect on his State Action, as early as October 1, 2008, and even negotiated for a stay of the State Court action pending the outcome of the Federal Action. However, he did not seek to intervene until July 8, 2009 — nearly nine months later and seven days after the Plaintiff and Defendants reached a settlement agreement that he objects to. Thus, it appears to the Court that Feldman deliberately chose to stay his State Action to wait and see what would happen in the Federal Action, sat on the sidelines for nearly nine months, and only chose to get involved in the Federal Action when he disagreed with the direction the Federal Action was taking.

Order on Motion for Intervention, DE 73 (Sep. 2, 2009), at 2-3 (citations omitted). The Court also concluded that speculation alone could not establish inadequacy:

> Feldman argues that BankAtlantic's interests have not been adequately represented because the Federal Action Plaintiff took only deposition testimony before settling the case. A disagreement with the view of the case or litigation tactics, however, does not mean BankAtlantic's interests are not adequately represented. Feldman's arguments about what formal written discovery would have shown is speculation.

Order on Motion for Intervention, DE 73 (Sep. 2, 2009), at 3-4. These rulings apply with equal weight toward overruling Feldman's objections to preliminary approval of the settlement.

Feldman further argues that the settlement is a product of collusion, though he offers not a scintilla of evidence to support that accusation. He also argues that Defendants' counsel is conflicted out of representing BankAtlantic Bancorp and the individual Defendants, thus warranting denial of the motion for preliminary approval. But, as shown below, this argument is premised on a gross misreading of the applicable law and the circumstances of this case. Finally, Feldman argues that

2

certain of the settlement terms are objectionable and that the proposed notice is inadequate, both of which arguments are also disposed of easily below.

## II. ARGUMENT

### A. The Settlement is Fair, Reasonable And Adequate.

Feldman's incendiary argument that the settlement is a "sham" that provides "no relief" for BankAtlantic Bancorp is demonstrably false. As set forth in the motion for preliminary approval, the settlement confers significant benefits upon BankAtlantic Bancorp and its shareholders. It eliminates the substantial costs of continuing to indemnify the individual Defendants against the defense costs associated with this litigation. The settlement secures the benefit of freeing company resources that otherwise would have been spent on this case. Moreover, BankAtlantic Bancorp will be able to re-allocate its litigation resources toward defending against the related litigation before this Court, the defense of which will require a substantial investment of both time and money.

These benefits flowing from the settlement are of particular value when compared to the strength of the claims in this case. Indeed, "[i]n evaluating the fairness, reasonableness and adequacy of a settlement, the court is primarily concerned with the strength of the case for plaintiffs on the merits balanced against the amount offered in settlement." *In re AOL Time Warner S'holder Deriv. Litig.*, No. 02cv6302, 2006 WL 2572114, at *3 (S.D.N.Y. Sep. 6, 2006) (citation omitted). Here, the relevant facts confirm that the likelihood of Plaintiff's success at trial and on appeal was minimal,[2] while the corresponding risks are significant.[3] Feldman does not and cannot argue otherwise.

---

[2] In this respect, Feldman's argument that "the Court upheld the sufficiency of the complaint against a vigorous motion to dismiss" changes nothing. In so ruling, the Court did not pass on the underlying factual merit of the claims, but rather only to the sufficiency of the pleading. And, those pleadings were judged against the more liberal Rule 8 pleading standards. Furthermore, Feldman's selective excerpting from the deposition transcripts does not alter the substance of the testimony — testimony which does not provide any factual support for any of the asserted claims.

[3] Tellingly, Feldman does not offer any case law to support his contention that the settlement is inadequate, unreasonable or unfair. Nor does he bother to address the cases supporting approval.

Feldman also complains that the release language of the settlement and the proposed final order approving the settlement will be *res judicata* for his state court action. But that is precisely what Feldman agreed to by staying his state court case in favor of allowing this case — which is the same as his case — to proceed. To be sure, at the time, Feldman might have thought that the stay would allow him to ride on the coattails of this case, ultimately yielding a share of attorneys' fees in exchange for little or no work. And, had this litigation followed that script, Feldman would, we suspect, not have uttered a word in protest as to the potential *res judicata* implications for his state court case.

Nor does the inclusion of four additional defendants in the state court action warrant altering the release language in the settlement. Parties that were sued, as well as those that could have been sued, are entitled to the benefits of estoppel from a final judgment. Otherwise, a crafty lawyer could always retain some piece of a claim by intentionally failing to name certain directors or officers in a derivative lawsuit. Moreover, it is this Plaintiff in this case — whom the Court has already determined to be an adequate derivative plaintiff — and this Court which will determine the scope of the release, not Feldman. The notion that Feldman gets a do-over by virtue of sideline sitting would make a mockery of this Court's jurisdiction over these parties and these claims.

Feldman also stands behind his state court action insider trading allegations against Defendants Alan Levan and John Abdo as further evidence that the settlement release language goes too far. The mere mention of these allegations serves to underscore the frivolity of Feldman's claims, as these particular insider trading allegations, which were cut and pasted from the securities class action pending before this Court, have previously been refuted *in toto*. "In fact, A. Levan and Abdo exercised options that resulted in a substantial *net increase* in their holdings during the class period." *See Hubbard v. BankAtlantic Bancorp, Inc., et al.*, No. 07cv61542, Order on Motion to Dismiss, DE 70 (Dec. 11, 2008), at 29 ("Accordingly, the Court is not persuaded that Abdo and A. Levan's insider sales create a strong inference of scienter as to these two individual Defendants.")

4

(emphasis in original and citations omitted). Insider purchases of stock that was purportedly inflated in value hardly makes a case for insider trading.

### B. There Is No Collusion.

Feldman casually accuses the parties in this case of "colluding" to manufacture a "bogus" settlement. This is a grave and serious accusation. It is for precisely this reason that "courts presume the absence of fraud or collusion, unless there is evidence to the contrary." *Bailey v. AK Steel Corp.*, No. 06cv468, 2008 WL 495539, at *4 (S.D. Ohio Feb. 21, 2008) (citations omitted); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006); *see also* NEWBERG ON CLASS ACTIONS § 11.51 (4th ed. 2002) ("Courts are to presume the absence of fraud or collusion in negotiating a the settlement, unless evidence to the contrary is offered.").

Here, Feldman does not even pretend to offer any evidence of collusion, relying instead on conclusory assertions and non-existent inferences. In fact, Feldman's motion does not contain a single affirmative statement of fact to support his collusion accusation. He, instead, offers nothing more than the supposedly "strong inference that the threat of having to pay defendants' attorneys' fees colored the Federal Derivative Plaintiff's prosecution of this case." Objections at 6-7. This is incorrect. But, even if the threat of fees did somehow color the prosecution of the case, that would not lead inexorably to the conclusion that the settlement is a product of collusion; to the contrary, because it says nothing about Defendants, their counsel or even the settlement itself, it is of little if any probative value in establishing collusion.

The history of this case further evidences the lack of collusion. The parties and their counsel have displayed civil yet pronounced and vigorous disagreement over the core issues in this case, both substantive and procedural. Furthermore, at the mediation and thereafter, the settlement process has been entirely at arm's length, with each side representing and pursuing its own interests, and exercising independent judgment. As Feldman well knows, the mediation itself was closely supervised by the Court appointed, and well respected, mediator Mark Buckstein.

Moreover, the terms of the settlement confirm the absence of collusion. "The authorities hold that if the settlement agreement itself is fair, reasonable and adequate, then the court may assume that the negotiations were proper and free of collusion." *Leonhardt v. Arvinmeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citation omitted). In addressing this particular factor, courts tend to "look to whether (1) the named plaintiffs' claims are treated more favorably than other plaintiffs' claims, and (2) the fee agreement suggests collusion." *IUE-CWA*, 238 F.R.D. at 599 (citations omitted). *See also In re Zoran Corp. Deriv. Litig.*, No. 06cv5503, 2008 WL 941897, at *2 (N.D. Cal. Apr. 7, 2008) (noting that collusive settlements typically entail handsome attorneys' fees to plaintiff's counsel as *quid pro quo* for broad releases and disposal of troublesome claims). Considering that this settlement provides no preference to the named Plaintiff nor attorneys' fees for counsel, the settlement agreement must be found not to be a product of collusion, and it should be preliminarily approved.

### C.  Plaintiff Hugo Is Adequate.

Feldman concedes that his inadequacy arguments are a repeat of the arguments from his motion to intervene. *See* Objections at 2 ("Feldman has briefed this issue at length in his motion to intervene, filed July 8, 2009."). There, like here, Feldman argues that Plaintiff's failure to take more discovery than he did renders him inadequate, *per se*. At the threshold, as indicated above, this Court has already addressed and rejected this exact argument. *See* Order on Motion for Intervention, DE 73 (Sep. 2, 2009), at 3-4.

The result in this settlement context should be the same. As discussed in the motion for preliminary approval, the fact that Plaintiff did not obtain document discovery, as opposed to deposition testimony, is of little moment with respect to approval of the settlement. Courts have repeatedly rejected the notion that the "too little discovery" objection is a valid basis upon which to reject a settlement. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming approval of settlement and noting that "[i]t is true that very little formal discovery was conducted

and there was no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted."); *Francisco v. Numismatic Guaranty Corp.*, No. 06cv61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) (approving settlement and overruling objection for lack of discovery); *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1316-17 (S.D. Fla. 2005) (approving settlement and overruling objection as to lack of discovery). A plaintiff must start with something to warrant discovery in the first instance. *See Cotton*, 559 F.2d at 1332 ("We have often seen cases which were 'over discovered.' In addition to wasting the time of the Court, the parties and their attorneys, it often adds unnecessarily to the financial burden of litigation and may serve as a vehicle to harass a party."). And, insofar as this Court, twice, denied motions to extend the discovery deadline, Feldman is essentially looking to make an end-run around this Court's rulings.[4]

Moreover, while Feldman seeks to pass the blame to others, he is equally subject to the same criticism, as he had actual knowledge of the case and its potential effect, yet chose to remain on the sidelines. As this Court noted, Feldman and his counsel should have been more diligent in monitoring this case — a case which they, knowing the potential *res judicata* implications, agreed would proceed before the state court action. Consequently, as this Court observed: "Feldman deliberately chose to stay his State Action to wait and see what would happen in the Federal Action, sat on the sidelines for nearly nine months, and only chose to get involved in the Federal Action when he disagreed with the direction the Federal Action was taking." Order on Motion for Intervention, DE 73 (Sep. 2, 2009), at 2-3 (citations omitted).

---

[4] Feldman's contention that "the claims at issue have never been investigated — except by the individual defendants who are the alleged wrongdoers here," Objections at 7, is ironic given that it is abundantly clear that Feldman has not investigated the claims.

### D. There Is No Conflict Of Interest.

Feldman next attacks the settlement, obliquely, by claiming that Defendants' counsel is conflicted by representing both BankAtlantic Bancorp and the individual director Defendants. The legal support for this argument, according to Feldman, is that "courts have recognized that a firm's dual representation of the Board and the Company creates an inherent conflict of interest." Objections at 7-8. Simply reading Feldman's cited cases, however, exposes this argument as lacking in intellectual candor.

For example, *Stepak v. Addison*, 20 F.3d 398 (11th Cir. 1994), the case upon which Feldman principally relies (though without much in the way of analysis), is distinguishable on its face. Therein, the Court made absolutely clear from the outset of its opinion that the conflict for the law firm only arose because of its prior representation of the individual directors — as opposed to the company itself — in a *criminal* investigation. *See id.* at 403-06. Indeed, at the beginning of the discussion regarding the conflict of interest issue, the Court expressly limits the definition of a "conflicted law firm" as follows:

> We use the term in a broader sense to designate any law firm that undertakes to provide legal services, whether investigatory or advisory, to a corporation in connection with a shareholder derivative demand, after having represented an alleged wrongdoer in a *criminal* investigation involving subject matter that overlaps with that of the demand.

*Id.* at 404 n. 3 (emphasis added). Later, in summarizing its ruling, the Court again reemphasizes the fact that the conflicted law firm represented the "alleged wrongdoer in *criminal* proceedings." *Id.* at 407 (emphasis added). Thus, the Court's holding, which it expressly describes as "a limited one," does not compel a similar result in this case. *Id.* at 411.

*Stepak* further establishes that a court, in addressing the conflict issue, must also take into account whether the claims have merit. On the one hand, "if the derivative suit is meritorious, the interests of the corporate entity and the interests of the insider defendants are likely to be directly adverse." *Id.* at 404. If, on the other hand, as is the case here, the derivative suit has minimal chance

of success, then "the corporation's and the alleged wrongdoers' interests will be aligned; both will want the derivative suit to be terminated." *Id.* In that circumstance, where the interests are aligned, there is no conflict. This is particularly true where, like here, there is no evidence suggesting that counsel could not "exercise independent professional judgment." *Id.* at 404-05 (citation omitted).

Feldman next relies upon *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993), citing it for his lead proposition that "a firm's dual representation of the Board and Company creates an inherent conflict of interest." Objections at 7-8. Amazingly, however, Feldman did not see fit to inform this Court that the Third Circuit in *Bolger* actually affirmed the lower court ruling allowing dual representation of the corporate and individual defendants. *Bolger*, 2 F.3d at 1317 ("We do not believe the district court abused its discretion in allowing common counsel here."). In so ruling, the Third Circuit, like the Eleventh Circuit in *Stepak*, took into account the underlying nature and validity of the claim, noting the ABA's statement that "[m]ost derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyers like any other suit." *Id.* at 1316 (citation omitted). Here, as evidenced by the factual record set forth in the joint motion for preliminary approval, the derivative claim in this case does not rise to a level where separate counsel would be required.[5]

---

[5] Equally unavailing to Feldman are *Klein v. FPL Grp., Inc.*, No. 02cv20170, 2004 WL 302292 (S.D. Fla. Feb. 5, 2004), and *In re Oracle Sec. Litig.*, 829 F. Supp. 1176 (N.D. Cal. 1993). *Klein* dealt with whether a board appointed evaluation committee was sufficiently independent under a totality of the circumstances test not applicable here. One of the factors Judge Gold considered in concluding that the committee was not sufficiently independent was its selection of law firms as counsel to the committee. *Klein*, 2004 WL 302292, at *22. In making that determination, however, Judge Gold was presented with a legion of evidence and arguments going directly to the conflict issue. *Id.* There are no such evidence or arguments in this case.

*Oracle* presented a unique situation where a nominal defendant corporation and the individual defendants were jointly represented by an outside law firm as well as the corporation's in-house general counsel. 829 F. Supp. at 1187-89. The Court specifically found that the "role played by Oracle's general counsel in this litigation is distressingly ambiguous." *Id.* at 1188. That particular circumstance, which is not present in this case, principally led to the Court's ruling that the dual representation was inappropriate. The Court also took issue with the $750k attorney fee

9

Moreover, putting aside the case law, Feldman has set forth no concrete evidence establishing that there was any sort of conflict to speak of. Nor does his state court complaint make any allegations regarding any conflict of interest being at the root of BankAtlantic Bancorp's refusal to comply with his shareholder demands. The plain truth, of course, is that there is no conflict and this is but another example of overzealous advocacy, unburdened by any recitation of fact.

### E. The Proposed Notice Is Adequate.

In a dispirited closing section, Feldman argues that the proposed notice of the settlement to BankAtlantic's shareholders is inadequate. To support this contention, Feldman incorrectly attempts to define the notice in terms of what it does or does not disclose regarding his state court action. This, of course, is not the proper measure for the notice in this case.

Rather, as set forth in the motion for preliminary approval, the proposed notice is sufficiently clear, as it plainly, fairly and succinctly informs as to the nature of the settlement, the date of the fairness hearing, and the deadline for objecting to the settlement. Feldman's objection on this and all points should be overruled.

## III. CONCLUSION

For the foregoing reasons and on the foregoing authorities, the Court should grant the joint motion for preliminary approval of settlement.

---

payment to plaintiff's counsel, which it found to make "the derivative settlement reek of collusion." *Id.* at 1189. That is also not an issue in this case.

Respectfully Submitted,

NIX, PATTERSON & ROACH, LLP
3600 B. North Capital of Texas Highway
Suite 350
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335

s/ Jeffrey J. Angelovich
JEFFREY J. ANGELOVICH

*Attorneys for Plaintiff*
*(additional counsel listed on service list)*


STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:  (305) 789-3200
Facsimile:   (305) 789-3395

s/ Eugene E. Stearns
EUGENE E. STEARNS
Florida Bar No. 149335
estearns@stearnsweaver.com
RICHARD JACKSON
Florida Bar No. 898910
rjackson@stearnsweaver.com
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@stearnsweaver.com
GORDON M. MEAD, JR.
Florida Bar No. 49896
gmead@stearnsweaver.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on September 8, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or other approved means.

                   s/ Adam M. Schachter
                   ADAM M. SCHACHTER

**SERVICE LIST**

*D. W. Hugo v. Alan B. Levan, et al.*
CASE NO. 08-61018-CIV-UNGARO
United States District Court for the Southern District of Florida

James P. Gitkin
Eric T. Salpeter
SALPETER GITKIN, LLP
Museum Plaza - Suite 503
200 South Andrews Avenue
Fort Lauderdale, FL 33301
Tel: (954) 467-8622
Fax: (954) 467-8623
*Attorneys for Plaintiff*

Jeffrey J. Angelovich
NIX, PATTERSON & ROACH, LLP
3600 B. North Capital of Texas Highway
Suite 350
Austin, TX 78746
Tel: (512) 328-5333
Fax: (512) 328-5335
*Attorneys for Plaintiff*

Bradley E. Beckworth
Susan Whatley
Brad Seidel
NIX, PATTERSON & ROACH, LLP
205 Linda Drive, PO Box 769
Daingerfield, TX 75638
Tel: (903) 645-7333
Fax: (903) 645-5389
*Attorneys for Plaintiff*

John C. Goodson
KEIL GOODSON, P.A.
406 Walnut Street
PO Box 618
Texarkana, AR 71854
Tel: (870) 772-4113
Fax: (870) 773-2967
*Attorneys for Plaintiff*